# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Woodbridge Group of Companies, LLC, *et al.*,<br><br>        Debtors.<br><br>Woodbridge Wind-Down Entity, LLC and WB 714 Oakhurst, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>Monsoon Blockchain Storage, Inc.,<br><br>        Defendant. | Chapter 11<br><br>Case No. 17-12560 (BLS)<br><br><br>Adv. Pro. No. 19-50102 (BLS)<br><br>Re: Docket Nos. 38, 39, 40, 44 |

*Colin R. Robinson, Esq.*
*Pachulski, Stang Ziehl & Jones, LLP*
*919 Market Street, 17th Floor*
*P.O. Box 8705*
*Wilmington, DE 19899*

*Kenneth N. Klee, Esq.*
*Klee, Tuchin, Bogdanoff & Stern LLP*
*1999 Avenue of the Stars, 39th Floor*
*Los Angeles, CA 90067*

*Counsel for Plaintiffs*

*Evan T. Miller, Esquire*
*Bayard, P.A.*
*600 N. King Street, Suite 400*
*Wilmington, DE 19801*

*William A. Smelko, Esq.*
*Procopio, Cory, Hargreaves & Savitch LLP*
*525 B Street. Suite 2200*
*San Diego, CA 92101*

*Counsel for Defendant*

## MEMORANDUM ORDER[1]

Before the Court is the Defendant's Motion to (I) Dismiss in Favor of Arbitration or (II) Alternatively, Transfer Venue (the "Motion to Dismiss"),[2] the opposition to the Motion to Dismiss filed by the Plaintiffs (the "Opposition"),[3] and the Defendant's reply thereto.[4] Briefing on the matter has been completed and the matter is ripe for decision.[5]

## BACKGROUND

1.  On December 4, 2017, the Woodbridge Group of Companies, LLC and its affiliates (the "Debtors") filed petitions for relief under Chapter 11.

2.  On October 26, 2018, the Court entered an Order confirming the First Amended Joint Chapter 11 Joint Plan of Liquidation of the Woodbridge Group of Companies, LLC and its Affiliated Debtors (the "Plan").[6]

3.  On February 19, 2019, the Debtors filed a notice that the Effective Date of the Plan occurred on February 15, 2019.[7]

---

[1] This Court has jurisdiction to decide this Motion pursuant to 28 U.S.C. § 157 and § 1334(b). For reasons discussed *infra*, this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). This Memorandum Order constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.
[2] AP Docket No. 38.
[3] AP Docket No. 40.
[4] AP Docket No. 44.
[5] Although the parties requested oral argument on this motion, the Court declines the invitation for argument as it is not necessary to decide the legal issues before the Court.
[6] On October 26, 2018, the Court entered the Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and its Affiliated Debtors (D.I. 2903) (the "Confirmation Order") confirming the Plan (D.I. 2397).
[7] D.I. 3421

4.     On February 2, 2019, the Plaintiffs[8] filed an adversary complaint (the "Complaint") against Monsoon Blockchain Storage, Inc. ("Monsoon" or the "Defendant") concerning ownership of a $318,000 "earnest money" deposit (the "Escrowed Funds") deposited by Monsoon upon execution of a purchase agreement dated November 14, 2018 (the "Purchase Agreement") for the purchase of real property located at 714 N. Oakhurst Drive, Beverly Hills, California (the "Property").[9]

5.     The Complaint has two counts: the first seeks a declaratory judgment regarding ownership of the Escrowed Funds, and the second seeks turnover of property of the estate under Bankruptcy Code §§ 362 and 542.

6.     The events underlying the issues raised in the Complaint occurred between confirmation of the Plan on October 26, 2018 and the Plan's Effective Date on February 15, 2019.

7.     The Purchase Agreement, attached as Exhibit A to the Complaint, consists of the following documents:

   a. Monsoon's Offer to the Debtor, submitted on November 14, 2018 at 1:39 p.m., including:
      i. Disclosure Regarding Real Estate Agency Relationship (2-page form)
      ii. Possible Representation of More Than One Buyer or Seller-Disclosure and Consent (1-page form)
      iii. Wire Fraud and Electronic Funds Transfer Advisory (1-page form)
      iv. California Residential Purchase Agreement and Joint Escrow Instructions (10-page form)

---

[8] The Complaint was originally filed on February 12, 2019 by the Woodbridge Group of Companies ("Woodbridge") and Eldredge Investments, LLC ("Eldredge" and, with Woodbridge, the "Original Plaintiffs"). However, after the Debtors' Plan was confirmed and its Effective Date occurred, the Woodbridge Wind-Down Entity LLC and WB 714 Oakhurst, LLC were substituted for the Original Plaintiffs. For ease of reference, the Original Plaintiffs and the substituted plaintiffs will be referred to herein as the "Plaintiffs."

[9] Complaint (AP Docket No. 1) ¶¶ 1-2.

  v. Buyer's Inspection Advisory (1-page form)
  vi. Addendum #1 (1-page form)
  vii. Representative Capacity Signature Disclosure (1-page form).

 b. The Debtor's Counter-Offer sent on November 14, 2018 at 6:29 pm., including:
  i. Seller Multiple Counter-Offer No. 1 (1-page form)
  ii. Addendum No. SMCO 1 (1-page form)
  iii. Assignment of Agreement Addendum (1-page form)
  iv. Representative Capacity Signature Disclosure (1-page form)
  v. Addendum No. 1 to Seller Multiple Counter-Offer No. 1 (5-page bespoke document)

The Plaintiff asserts that the parties reached an agreement - - and the Offer and Counter-Offer together became the "Purchase Agreement" - - on November 15, 2018 at 1:58 p.m., when Monsoon's CEO accepted the Counter-Offer by counter-signing and returning it.[10]

8. On January 2, 2019, the Bankruptcy Court approved the Purchase Agreement (the "Sale Order") and the Complaint alleges that the parties were obligated to close escrow for the purchase and sale of the Property within fourteen days following the entry of the Sale Order.[11]

9. The Complaint alleges that Monsoon breached its obligations under the Purchase Agreement when it failed to deposit into the escrow the purchase price and other deliverables required under the Purchase Agreement.[12] The Complaint further alleges that Monsoon failed to cure its breach by again failing to close escrow within three days following its receipt of the Demand to Close Escrow.[13]

---

[10] Complaint, Ex. A at 19 of 27.
[11] *Id.* at ¶¶ 4-5, 24.
[12] *Id.* at ¶ 6.
[13] *Id.* at ¶ 10.

4

10.     The Complaint alleges that on January 23, 2019, Eldredge, through its legal counsel, notified Monsoon that it was terminating the Purchase Agreement and requested that Monsoon countersign the *Cancellation of Contract, Release of Deposit, and Cancellation of Escrow* (the "Cancellation Instructions").[14] Monsoon refused to execute the Cancellation Instructions and, instead, responded by a letter proposing "three paths forward," (i) returning the Escrowed Funds to Monsoon; (ii) extending the closing date to allow for repairs and appraisal; or (iii) becoming "embroiled in a legal dispute."[15]

11.     On October 10, 2019, the Court entered a Memorandum Order denying the Plaintiff's Motion for Default Judgment

12.     On November 25, 2019, the Defendant filed the Motion to Dismiss, arguing that the adversary complaint should be dismissed so the dispute can proceed in arbitration pursuant to paragraph 22(B) in the California Residential Purchase Agreement and Joint Escrow Instructions, or, alternatively, that the Court should transfer this matter to the United States Bankruptcy Court for the Central District of California (the "California Court") pursuant to 28 U.S.C. § 1412.

13.     On December 16, 2019, the Plaintiffs filed their Opposition to the Motion to the Motion to Dismiss. The Plaintiffs argue that the parties agreed to the Addendum attached to the Counter-Offer (the "Addendum"), which, by its terms controls over anything to the contrary in the preprinted forms, and specifically provides in paragraph 6 that: "The Bankruptcy Court shall have sole and exclusive

---

[14] *Id.* at ¶¶ 7, 26, 27.
[15] *Id.* at ¶ 8. *See also* Ex. E (AP Docket No. 8).

5

jurisdiction to interpret and enforce the terms of the Agreement and the Parties hereby consent and submit to such exclusive jurisdiction."[16]

14. The Defendant filed a reply brief on December 30, 2019.

## ANALYSIS

Monsoon's Request for Arbitration

15. "Deciding whether arbitration is required is a two-step process: in the first step, the court determines whether 'there is an agreement to arbitrate,' and then in the second step, the court decides whether 'the dispute at issue falls within the scope of the agreement.'"[17]

16. Paragraph 22 of the preprinted California Residential Purchase Agreement and Joint Escrow Instructions included with Monsoon's Offer provides for arbitration of disputes arising out of the agreement (the "Arbitration Clause"). However, the Addendum attached to the Debtors' Counter-Offer states, in pertinent part:

> To the extent that this Addendum conflicts with the Offer, the terms of this Addendum shall control and take precedence over the terms of the Offer.[18]
> ....
> This Agreement shall be interpreted and enforced pursuant to the laws of the State of California and the United States of America including the Bankruptcy Code, Title 11, United States Code. The Bankruptcy Court shall have the sole and exclusive jurisdiction to interpret and enforce the terms of the Agreement and the Parties hereby consent and submit to such exclusive jurisdiction.[19]

---

[16] Complaint, Ex. A at 26 of 27.
[17] *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 219) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).
[18] Complaint, Ex. A at 23 of 27, preamble.
[19] Complaint, Ex. A at 26 of 27, ¶ 6.

6

17. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."[20] "In applying state law at step one, [the Court] do[es] *not* invoke the presumption of arbitrability."[21]

18. California law provides that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."[22] "In interpreting an unambiguous contractual provision [a court is] bound to give effect to the plain and ordinary meaning of the language used by the parties."[23]

19. The parties explicitly agreed that the Addendum's terms control over the terms in the Offer. Further, the parties specifically agreed that the Bankruptcy Court has sole and exclusive jurisdiction to interpret and enforce the terms of the Purchase Agreement. Accordingly, the parties did not agree to arbitrate claims arising out of the Purchase Agreement.

20. Monsoon argues, however, that the Court of Appeals for the Third Circuit previously held that a general "sole and exclusive jurisdiction" clause, which is silent on the issue of arbitration, cannot override a specific right to arbitration.[24]

---

[20] *First Options of Chi. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)
[21] *Jaludi*, 933 F.3d at 255 (citing *Century*, 584 F.3d at 524) (emphasis in original).
[22] *In re Outer Harbor Terminal, LLC*, 567 B.R. 708, (Bankr. D. Del. 2017) (citing Cal. Civ. Code § 1638; *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53, 67 Cal. Rptr. 2d 850 (Cal. Ct. App. 1997)).
[23] *Id.* at 712-13 (quoting *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 684, 99 Cal. Rptr. 2d 809 (Cal. Ct. App. 2000)).
[24] *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 103-04 (3d Cir. 2017); *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987), *abrogated on other grounds.*

The *Reading* and *Patten* cases are unlike the matter before me since those decisions determined that the forum selection clause in a broker-dealer contract that did not specifically reference arbitration could not waive a party's rights under a separate compulsory arbitration rule established by the Financial Industry Regulatory Authority ("FINRA").[25] The *Reading* court wrote that:

> Without a specific reference to arbitration, the forum-selection clause requiring parties to litigate actions "arising out of" the contract and related transactions lacks the specificity required to advise Reading that it was waiving its affirmative right to arbitrate under FINRA 12200.
>
> . . . .
>
> [W]e are reluctant to find an implied waiver here. Reading's right to arbitrate is not contractual in nature, but rather arises out of a binding, regulatory rule that has been adopted by FINRA and approved by the SEC.[26]

Unlike *Reading*, Monsoon's claim to arbitration rights is not based upon a separate statute or regulatory rule but is based upon language included the Purchase Agreement. The parties specifically agreed to override that language in the Addendum. Moreover, the claims at issue here all arise out of the interpretation and enforcement of the Purchase Agreement, which the parties agreed to submit to the sole and exclusive jurisdiction of the Bankruptcy Court. *Reading* and *Patten* are inapposite.

---

[25] "FINRA is a self-regulatory organization (SRO) that is statutorily authorized 'to exercise comprehensive oversight over all securities firms that do business with the public.'" *Reading*, 900 F.3d at 90 n. 1 (quoting *Goldman Sachs & Co. v. City of Reno*, 747 F.3d 733, 737 (9th Cit. 2014)). FINRA has promulgated numerous arbitration-related rules, including FINRA Rule 12200, which requires FINRA members to submit customer disputes to FINRA arbitration whenever a customer demands arbitration. *Id.* at 93-94 (citations omitted). *Patten* considered a customer's right to arbitration under FINRA's predecessor SRO, i.e., the National Association of Securities Dealers, Inc. (NASD). *Id.* at 102-03.

[26] *Reading*, 900 F.3d at 103.

21. Monsoon also argues that the forum selection clause fails to upset its arbitration rights because the Purchase Agreement and the events at issue arose post-confirmation when a bankruptcy court has limited jurisdiction.[27] Monsoon asserts that when a "court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization."[28]

22. Although the scope of a bankruptcy court's jurisdiction diminishes with plan confirmation, it does not disappear entirely.[29] Here, the Bankruptcy Court has jurisdiction over the claims asserted in the Complaint, which were filed after the Confirmation Order was entered, but *before* the Effective Date.

23. The Debtors' Plan established the Wind-Down Entity on the Effective Date of the Plan[30] and, accordingly, that entity did not have the authority to sell assets without Bankruptcy Court approval until after the Effective Date.[31] The Purchase Agreement was executed and the sale was expected to close before the

---

[27] *In re Continental Airlines, Inc.*, 236 B.R. 318, 324 (Bankr. D. Del. 1999) *aff'd* 2000 WL 1425751 (D. Del. Sept. 12, 2000) *aff'd* 279 F.3d 226 (3d Cir. 2002) ("[C]ourts routinely find that the bankruptcy courts have no jurisdiction over the affairs of the post-confirmation debtor and its creditors, particularly with respect to claims arising post-confirmation.") (citations omitted).
[28] *Id.* at 323.
[29] "Post-confirmation, ... bankruptcy jurisdiction over non-core proceedings narrows; it exists only if there is "a close nexus to the bankruptcy plan or proceeding." *Penson Tech. LLC v. Schonfeld Grp. Holdings, LLC (In re Penson Worldwide)*, 587 B.R. 6, 12 (Bankr. D. Del. 2018) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 167 (3d Cir. 2004)). "[T]he jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan. But where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate." *Resorts* at 168-69. "In contrast, in core proceedings the close nexus test does not apply; bankruptcy jurisdiction remains the same as it was pre-confirmation." *Penson*, 587 B.R. at 12 (citing *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 265 (3d Cir. 2007); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 621–22 (Bankr. D. Del. 2016)).
[30] Plan, § 1.150.
[31] Plan, §5.3.4.

Effective Date, and, so, required Bankruptcy Court approval to sell the estate property pursuant to Bankruptcy Code §§ 105 and 363 free and clear of all liens, claims, interest and encumbrances.[32] A motion seeking court authorization of the sale of estate assets is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N) and, likewise, matters seeking to interpret or enforce orders issued in core proceedings are also core proceedings within a bankruptcy court's jurisdiction.[33] Monsoon's argument that the bankruptcy court lacks jurisdiction to hear these matters must fail.

24. Even assuming that the parties agreed to arbitrate claims under the Purchase Agreement, the second step of the arbitration analysis requires the Court to determine whether the dispute at issue falls within the scope of the agreement. The Arbitration Clause here excludes from arbitration "any matter that is within the jurisdiction of a . . . bankruptcy court."[34] As previously discussed, this issues here clearly fall within the jurisdiction of the bankruptcy court and, therefore, are excluded from the Arbitration Clause.

25. For all of the foregoing reasons, Monsoon's Motion to Dismiss to allow this matter to proceed to arbitration will be DENIED.

---

[32] D.I. 3254

[33] *HHI FormTech LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus. LLC)*, 439 B.R. 352, 357 (Bankr. D. Del. 2010) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009)(holding that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *In re Trans World Airlines, Inc.*, 278 B.R. 42, 49 n. 16 (Bankr.D.Del.2002) ("Core proceedings under § 157(b)(2)(N) are those which arise from, concern, or have some impact on '*orders* approving the sale of property'....") (emphasis in original)).

[34] Complaint, Ex. A at 13 of 27.

Monsoon's Request for Change of Venue

26. Alternatively, Monsoon asks that this Court transfer the adversary proceeding to the California Court pursuant to 28 U.S.C. § 1412, which provides that a court "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

27. The Plaintiffs oppose any transfer of venue, arguing that the parties' forum selection clause in the Purchase Agreement requires this matter to be determined by the Bankruptcy Court. [35]

28. "[T]he Supreme Court held that forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'"[36] "A forum selection clause is 'unreasonable' where the defendant can make a 'strong showing' *either* that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' *or* that the clause was procured through 'fraud and overreaching.'"[37] Monsoon has made no such showing of unreasonableness here.

29. On a motion to transfer venue, however, a valid forum selection clause is not determinative, but only a significant factor in the court's analysis.[38] Courts in

---

[35] Complaint, Ex. A at 26 of 27, ¶ 6.
[36] *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) *superseded by* 28 U.S.C § 1404(a)).
[37] *Id.* (quoting *Bremen*, 407 U.S. at 15, 18) (emphasis in original).
[38] *DHP Holdings II Corp. v. The Home Depot (In re DHP Holdings II Corp.)*, 435 B.R. 264, 269 (Bankr. D. Del. 2010) (citing *Stewart Organization Inc. v. Ricoh Corp.*, 487 U.S. 22, 28-29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ("A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.")).

the Third Circuit have considered numerous factors in a venue transfer analysis, including: (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) location of books and records and/or the possibility of viewing the premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the court's dockets, (10) the public policies of the fora, (11) the familiarity of the judge with applicable state law, and (12) the local interest in decided local controversies at home.[39]

30. Consideration of the venue transfer factors weighs in favor of denying the motion to transfer venue of this matter to the California Court because:

    a. *Factors 1 & 2 (forum preferences) and Factor 5 (convenience of the parties)*: The forum selection clause causes these factors to weigh against transfer, since the parties have contractually agreed to the jurisdiction of the bankruptcy court.[40]

    b. *Factor 3 (location where claim arose)*: The Complaint seeks a declaratory judgment regarding the ownership of escrowed funds and the turnover of property of the estate and the Plaintiffs argue there is no central

---

[39] *DHP Holdings*, 435 B.R. at 269 (quoting *Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Del., Inc.*, 296 B.R. 323, 3225-26 (Bankr. D. Del. 2003)).

[40] Some courts have recognized that forum selection clauses are more likely to be enforced in *non-core* matters, but this adage applies only when the forum selection clause would transfer the case out of the bankruptcy court. *DHP Holdings*, 435 B.R. at 270 (emphasis added) (citing *Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 837 (S.D.N.Y. 2002) (stating that the strong policy favoring the enforcement of a forum selection clause is not as strong in a core proceeding because enforcement would frustrate the bankruptcy policy of centralizing core matters.)). Here, the opposite is true: the parties' forum selection clause would keep the core matter under the jurisdiction of the bankruptcy court. This weighs in favor of enforcing the parties' forum selection clause.

location with respect to the claims. But the underlying contract is for the sale of real property located in California, so this factor weighs in favor of transfer.

   c. *Factor 8 (practical considerations)*: This factor requires consideration of "whether it is actually easier, faster or less expensive to litigate this adversary in another forum."[41] Because the court is already familiar with this matter and the Chapter 11 case, it furthers judicial economy for the court to retain this adversary proceeding. This factor weighs against transfer.

   d. *Factor 10 (public policies of the fora) and Factor 12 (local interest)*: The policy of this forum "favors centralization of bankruptcy matters and the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determining a proceeding in bankruptcy."[42] There is an interest in keeping matters concerning § 363 sales before the bankruptcy court that authorized the sale.[43] These factors weigh against transfer.

   e. *Remaining Factors*: The remaining venue factors are neutral or do not have a material impact on the analysis.

Overall, the factors weigh against transfer of this matter to the California Court. Monsoon's motion to transfer venue will be DENIED.

Accordingly, it is hereby:

**ORDERED** that Defendant's Motion to (I) Dismiss in Favor of Arbitration or (II) Alternatively, Transfer Venue, is **DENIED**, and it is

---

[41] *DHP Holdings*, 435 B.R. at 274 (citing *Oglebay Norton Co. v. Port (In re Onco Inv. Co.)*, 320 B.R. 577, 581 (Bankr. D. Del. 2005)).

[42] *Id.* at 275 (internal quotation marks omitted) (quoting *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990)).

[43] Monsoon sought to purchase the Property free and clean of liens and interests under Bankruptcy Code § 363. When defendants seek a bankruptcy court's assistance in a transaction, it is not inequitable to require them to litigate matters regarding that transaction in the same court. *Cf. Penson Tech. LLC v. Schonfeld Grp. Holdings LLC (In re Penson Worldwide)*, 587 B.R. 6, 21 (Bankr. D. Del. 2019) (quoting *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 2616, 180 L.Ed. 475 (2011) ("He who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.")).

further **ORDERED** that the Court will hold a status hearing on **August 26, 2020 at 9:30 a.m. (ET)** in Courtroom No. 1, United States Bankruptcy Court, 824 N. Market Street, 6th Floor, Wilmington, DE 19801.

BY THE COURT:

Date: July 15, 2020
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge