IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>WOODBRIDGE GROUP OF COMPANIES, LLC,<br>et al.,<br>Remaining Debtors. | Chapter 11<br>Case No. 17-12560 (BLS)<br>(Jointly Administered) |
| WOODBRIDGE WIND-DOWN ENTITY, LLC and<br>WB 714 OAKHURST, LLC,<br>Plaintiffs,<br>vs.<br>MONSOON BLOCKCHAIN STORAGE, INC.,<br>Defendant. | Adversary Proceeding<br>No. 19-50102 (BLS) |

## ANSWER

Monsoon Blockchain Storage, Inc. (the "Defendant"), hereby files this answer (the "Answer") to Plaintiff's Woodbridge Wind-Down Entity, LLC and WB 714 Oakhurst, LLC (together, the "Plaintiff's") Complaint (the "Complaint"). In Answer to the Complaint, the Defendant respectfully submits as follows:

1. Answering Paragraph 1 of the Complaint, Defendant admits that this is an action concerning ownership of a $318,000 "earnest money" deposit (the "Escrowed Funds") presently in the possession of non-party A&A Escrow Services, Inc. (the "Escrow Agent").

2. Answering Paragraph 2 of the Complaint, Defendant admits The Escrowed Funds were deposited by Monsoon upon execution of a California Residential Purchase

Agreement and Joint Escrow Instructions dated November 14, 2018 (the "Purchase Agreement"), for the purchase of the real property owned by Eldredge located at 714 N. Oakhurst Drive, Beverly Hills, California, together with Eldredge's right, title, and interest in and to the buildings located thereon and any improvements and fixtures located thereon (collectively, the "Property").

3. Answering Paragraph 3 of the Complaint, Defendant admits On or about December 4, 2018, Monsoon waived **_certain_** Buyer contingencies under the Purchase Agreement by signing and delivering to Eldredge that certain Contingency Removal No. 2. However, Monsoon at all times made clear the primary contingency – the source of funds to purchase the property – could not be satisfied until an Equity Financing Agreement had closed and it had received the funding anticipated therefrom. This Equity Financing Agreement NEVER closed.

4. Answering Paragraph 4 of the Complaint, Monsoon did not release any and all contingencies. As Plaintiffs were, and are, well aware Defendant's Equity Financing Agreement never closed and it never had the ability to purchase the Property, and does not today, have the ability to purchase the Property.

5. Answering Paragraph 5 of the Complaint, escrow could not be closed because all contingencies had not been met.

6. Answering Paragraph 6 of the Complaint, Monsoon admits it was unable to close escrow but denies it was in breach and denies there was even a Closing Date because all contingencies had not been met, including the single most important contingency, Defendant receiving the funding to enable it to purchase the Property.

7. Answering Paragraph 7 of the Complaint, Monsoon admits it was unable to close escrow, but restates that it was not required to close escrow because all conditions precedent had not been met. Eldredge had no right to demand Defendant close escrow, terminate the Purchase Agreement or demand liquidated damages.

8. Answering Paragraph 8 of the Complaint, Monsoon admits it refused to execute the Cancellation Instructions. Defendant again asserts all conditions precedent were not, and to date, have not, been met, and Defendant is under no obligation to purchase the Property.

9. Answering Paragraph 9 of the Complaint, Monsoon admits that Eldredge sent Defendant a self-serving letter, drafted by a litigator, for the purpose of advancing its interests at trial.

10. Answering Paragraph 10 of the Complaint, Monsoon denies breaching the Purchase Agreement. Eldredge has no rights of any kind against Monsoon.

**IN ADDITION, PLAINTIFF'S SOLD THE PROPERTY FOR THE FULL PURCHASE PRICE IN MAY OF 2019. THIS ACTION IS A FRAUD ON THE COURT AND A BLATANT ATTEMPT TO OBTAIN UNJUST ENRICHMENT. WOODBRIDGE'S FORMER CEO JUST GOT SENTENCED TO 25 YEARS IN PRISON FOR A $1.2 BILLION FRAUD. SEE EXHIBIT 1.**

11. Answering Paragraph 11 of the Complaint, Defendant seeks declaratory relief that the Escrowed Funds belongs to it and should be released by the Escrow Agent to it forthwith.

12. Answering Paragraph 12 of the Complaint, Monsoon has no independent knowledge as to whether Plaintiffs and hundreds of affiliated entities are debtors and debtors in possession (collectively, the "Debtors") in a series of jointly administered chapter 11 cases styled In re Woodbridge Group of Companies, LLC, et al., Case No. 17-12560 (KJC) (Bankr. D. Del.) (collectively, the "Bankruptcy Case").

13. Answering Paragraph 13 of the Complaint, Monsoon admits the Purchase Agreement includes Addendum No. 1 to Seller Multiple Counter Offer No. 1 (the "Addendum"), which was separately executed by both Eldredge and Monsoon. Monsoon admits the sixth numbered paragraph of the Addendum specifies that this Bankruptcy Court "shall have sole and exclusive jurisdiction to interpret and enforce the terms of the [Purchase] Agreement and the Parties hereby consent and submit to such exclusive jurisdiction."

14. Answering Paragraph 14 of the Complaint, Monsoon has no idea when the Sale Order was created or under what pretenses it was obtained.

15. Answering Paragraph 15 of the Complaint, Monsoon admits that (i) this Court has jurisdiction over this adversary proceeding under sections 157 and 1334 of the Judicial Code (28 U.S.C. §§ 157 & 1334); and (ii) this adversary proceeding is a "core" proceeding within the meaning of section 157(b)(2)(A), (E), and (O) of the Judicial Code (28 U.S.C. § 157(b)(2)(A), (K), & (O)). Defendant cannot understand the balance of Paragraph 15 of the Complaint.

16. Answering Paragraph 16 of the Complaint, Monsoon admits Venue of this adversary proceeding is proper in this Court pursuant to sections 1408 and 1409 of the Judicial Code (28 U.S.C. §§ 1408 & 1409).

17. Answering Paragraph 17 of the Complaint, Monsoon neither admits nor denies Plaintiff's allegations as they are outside Defendant's knowledge.

18. Answering Paragraph 18 of the Complaint, Monsoon admits that it is a Delaware corporation and that its registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

19. Answering Paragraph 19 of the Complaint, Monsoon and Eldredge are not parties to the Purchase Agreement (including the Addendum thereto). Eldredge terminated the Purchase Agreement and sold the Property to a third party for the full amount which was to be paid by Monsoon under the Purchase Agreement. Eldredge suffered no damages and Monsoon never breached the Purchase Agreement because all conditions precedent were not met. THIS ACTION IS A FRAUD ON THE COURT AND DEFENDANT AS PLAINTIFF HAS SUFFERED NO DAMAGES.

20. Answering Paragraph 20 of the Complaint, Monsoon admits that Section 3.A of the Purchase Agreement required Monsoon to make an initial deposit of $318,000, which is 3% of the $10,600,000 purchase price specified in the Purchase Agreement.

21. Answering Paragraph 21 of the Complaint, Monsoon admits that, in accordance with Section 3.A, Monsoon made the initial deposit, which comprises the Escrowed Funds held by the Escrow Agent.

22. Answering Paragraph 22 of the Complaint, Monsoon denies the Purchase Agreement contains all conditions precedent to the purchase of the Property. Most importantly, the Purchase Agreement did not contain the condition precedent that Monsoon's Equity Financing close before the Purchase Agreement could be consummated.

23. Answering Paragraph 23 of the Complaint, Monsoon denies waiving all of the contingencies to Monsoon's obligations under the Purchase Agreement. Since Monsoon's Equity Financing did not close, it did not have the ability to purchase the Property. It is absurd to assert that a start-up corporation, relying exclusively on the closing of its Equity Financing to finance the purchase of the Property, would waive all conditions to the closing of the sale of the Property when its Equity Financing had not closed. Did the Plaintiffs check the Defendant's financial statements before they signed the Purchase Agreement or were they just looking to rip off a quick $300,000?

24. Answering Paragraph 24 of the Complaint, Monsoon had no part in misrepresenting to the Court that all conditions precedent had been satisfied and no had part in falsely inducing the Court to issue the Sales Order. The Sales Order was induced by the Fraud of the Plaintiffs and is null and void and of no further force and effect.

25. Answering Paragraph 25 of the Complaint, Monsoon admits "Section 14.G of the Purchase Agreement provides as follows: CLOSE OF ESCROW: Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 ... Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow."

26. Answering Paragraph 26 of the Complaint, Monsoon admits Eldredge delivered to Monsoon on January 18, 2019, the Demand to Close Escrow, which required that escrow be closed within 3 ... Days.

27. Answering Paragraph 27 of the Complaint, Monsoon refused to close escrow on January 22, 2019 because all conditions precedent had not been met. In a blatant breach of the Purchase Agreement, Eldredge delivered the Termination Notice to Monsoon on January 23, 2019.

28. Answering Paragraph 28 of the Complaint, Monsoon admits Section 21.B of the Purchase Agreement is a liquidated damages clause that provides in pertinent part as follows: "If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid."

29. Answering Paragraph 29 of the Complaint, Monsoon denies Eldredge has fully performed all of its obligations under the Purchase Agreement. To the contrary, Monsoon asserts that Eldredge prematurely terminated the Purchase Agreement before all conditions precedent were satisfied and before the purpose of the contract had been frustrated.

30. Answering Paragraph 30 of the Complaint, Monsoon denies that it defaulted under the Purchase Agreement.

31. Answering Paragraph 31 of the Complaint, Monsoon again denies that it defaulted under the Purchase Agreement.

32. Answering Paragraph 32 of the Complaint, Monsoon acknowledges that the Escrow Agent is unwilling to release the Escrowed Funds to Monsoon prior to receiving mutual escrow cancellation instructions signed by Monsoon and Eldredge, or a court order instructing the Escrow Agent to release the Escrowed Funds to Monsoon. Monsoon acknowledges that, likewise, the Escrow Agent is unwilling to release the Escrowed Funds to Eldredge.

33. Answering Paragraph 33 of the Complaint, notwithstanding Monsoon's request that Eldredge the release of the Escrowed Funds to Monsoon, Eldredge has failed to consent to the Escrow Agent's release of the Escrowed Funds to Monsoon. Monsoon admits denying Eldredge's request for the same.

34. Answering Paragraph 34 of the Complaint, Monsoon admits that Section 25 of the Purchase Agreement provides as follows: ATTORNEY FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in [Section] 22A.

35. Answering Paragraph 35 of the Complaint, Monsoon denies Eldredge is entitled to any attorney's fees due to fraud, fraudulent misconduct and premature termination of the Purchase Agreement.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment Regarding Ownership of Escrowed Funds

36. Answering Paragraph 36 of the Complaint, Defendant repeats and realleges its responses to Paragraphs 1 through 35 as though more fully set forth by reference herein.

37. Answering Paragraph 37 of the Complaint, Defendant denies each and every allegation contained therein.

38. Answering Paragraph 38 of the Complaint, Defendant denies each and every allegation contained therein.

## SECOND CLAIM FOR RELIEF

### Turnover of Property to the Estate (Bankruptcy Code Sect. 362 & 542)

39. Answering Paragraph 39 of the Complaint, Defendant repeats and realleges its responses to Paragraphs 1 through 38 as though more fully set forth by reference herein.

40. Answering Paragraph 40 of the Complaint, Defendant denies each and every allegation contained therein.

41. Answering Paragraph 41 of the Complaint, Defendant denies each and every allegation contained therein.

42. Answering Paragraph 42 of the Complaint, Defendant denies each and every allegation contained therein.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs claims on file fail to state a claim against Defendant upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of waiver, estoppel, unclean hands and other equitable defenses.

### THIRD AFFIRMATIVE DEFENSE

Defendant has fulfilled all of its contractual and legal obligations to Plaintiffs, and thus do not owe Plaintiffs anything.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to any relief as Defendant has not breached any of its contractual or legal obligations to Plaintiffs.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any relief as Plaintiff has breached its agreements with Defendant, thereby relieving Defendant from any obligation to Plaintiffs.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs have received full performance of all obligations and duties to which they are entitled under any agreement with Defendant.

## SEVENTH AFFIRMATIVE DEFENSE

Any and all contractual/legal obligations which defendant did not perform were discharged by frustration, unreasonable expectations, unforeseeable event, and/or mistake.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs have received full performance of all obligations and duties to which they are entitled under any agreements with Defendant.

## NINTH AFFIRMATIVE DEFENSE

Some or all of the damages and losses, if any exist, which allegedly have been incurred by the Plaintiffs were not and are not a foreseeable consequence of the acts complained of by Plaintiffs, and therefore, Plaintiffs should not be permitted to unjustly enrich themselves thereby.

## TENTH AFFIRMATIVE DEFENSE

The losses or damages, if any, alleged here to have been sustained by Plaintiffs is the result in whole or part, of Plaitiffs' own negligence, carelessness, poor business judgment, and/or such acts or omissions of its authorized agents and are not the result of any breach of contract by Defendant.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to use proper and reasonable efforts to mitigate the losses and damages allegedly incurred, and, therefore, Defendant has been released and discharged from any liability to Plaintiffs.

### TWELFTH AFFIRMATIVE DEFENSE

Some or all of the damages and losses, if any exist, allegedly incurred by Plaintiffs were not and are not actually, directly, indirectly and/or proximately caused by any of Defendant's alleged actions.

### THIRTEENTH AFFIRMATIVE DEFENSE

Any and all of Defendant's actions and/or contractual/legal obligations which Plaintiffs complained upon were waived or ratified by Plaintiffs.

### FOURTEENTH AFFIRMATIVE DEFENSE

Defendant at all times acted reasonably and in good faith in discharging its obligations to Plaintiffs.

### FIFTEENTH AFFIRMATIVE DEFENSE

Defendant at all times acted reasonably and in good faith in discharging its obligations to Plaintiffs.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to any relief based on the doctrine of release.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to any relief based on the failure of a condition precedent to the contract.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to any relief based upon the Statute of Frauds.

## NINETEENTH AFFIRMATIVE DEFENSE

The information is based on attorney-client privilege and is not waived in this case.

## TWENTIETH AFFIRMATIVE DEFENSE

The Defendant does not waive any rights to any settlement negotiations in this case and the documents cannot be admitted into evidence.

## TWENTY FIRST AFFIRMATIVE DEFENSE

The conduct was not based upon willful, malicious, wanton, or reckless actions.

## TWENTY SECOND AFFIRMATIVE DEFENSE

The actions were not the proximate cause of the harm.

## TWENTY THIRD AFFIRMATIVE DEFENSE

The down payment was not made by the Plaintiffs but by the Defendant.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

Pursuant to Rule 11, as amended, all possible affirmative defenses may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry upon the filing of Defendant's answer, pro se, and therefore Defendant reserves the right to amend its answer to allege additional affirmative defenses if subsequent investigations so warrant.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for relief as follows:

1. That the Plaintiffs are not entitled to any monies in that they have failed to state a claim;

2. That the Plaintiffs are not entitled to any attorney's fees and costs;

3. That the Court direct the Escrow Agent to release the Escrow to the Defendant;

4. That the Defendant is entitled to its attorney's fees and costs;

5. That the Court award any other such further relief as the Court deems just and proper.

Respectfully Submitted this 8th day of October 2020

                                                MONSOON BLOCKCHAIN STORAGE, INC.

                                                /s/ Christopher Basile, its CEO

Los Angeles Times

LOG IN

Exhibit 1

BUSINESS

# Former Woodbridge Group CEO gets 25 years in $1.3-billion fraud

By BOB VAN VORIS | BLOOMBERG
OCT. 16, 2019 | 5:45 AM



Robert Shapiro, the former chief executive of Woodbridge Group of Cos., received the maximum sentence of 25 years in prison for running a $1.3-billion fraud that caused more than 7,000 retirees and other investors to lose money.

Shapiro, 61, of Sherman Oaks, promised returns as high as 10% from investments in loans to property developers. Instead, he used money from new investors to repay earlier ones and used $36 million to buy luxury homes, wines, paintings and custom jewelry for his wife.

U.S. District Judge Cecilia Altonaga in Miami sentenced Shapiro on Tuesday, giving him twice the amount of prison time suggested by his lawyers, according to court records.

Shapiro's team argued that he's in poor health and that the 25-year term recommended by prosecutors is harsher than the sentence he would probably have gotten for armed bank robbery, hijacking an airplane, sexual abuse of a child or even murder.

Prosecutors said Shapiro moved money through a network of 270 limited liability companies that he controlled. Investors lost $450 million, according to the government.

The scam ran from July 2012 until December 2017, when Woodbridge filed for Chapter 11 bankruptcy protection.

Shapiro pleaded guilty to conspiracy and tax evasion in August. In November 2018, he agreed to pay $120 million to resolve related civil claims by the U.S. Securities and Exchange Commission. Two alleged co-conspirators are scheduled for trial in June.

Prosecutors said Shapiro used investor money for his $6.7-million home and $3.1 million for chartering planes and personal travel. He agreed to forfeit artworks by Pablo Picasso, Alberto Giacometti, Marc Chagall and Pierre-Auguste Renoir; 603 bottles of wine; numerous pieces of luxury jewelry; and a 1969 Mercury convertible.

BUSINESS



## Your guide to our new economic reality.

Get our free business newsletter for insights and tips for getting by.

Enter Email Address

**SIGN ME UP**

You may occasionally receive promotional content from the Los Angeles Times.

Bob Van Voris

---

**MORE FROM THE LOS ANGELES TIMES**

BUSINESS

**Facebook bans political ads after end of voting on election day**

Oct. 7, 2020

**MONSOON BLOCKCHAIN STORAGE, INC.**
2877 Paradise Road
Unit 702
Las Vegas, Nevada 89109
347-742-2824
*Email: cmbasile@monsooncoin.com*

**FILED**
2020 OCT 14  AM 8:42
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Via Federal Express                                             October 8, 2020

Hon. Brendan Linehan Shannon
United States Bankruptcy Court
824 North Market Street
6th Floor
Wilmington, Delaware, 19801

**Re: Woodbridge Wind-down Entity, LLC and WB 714 Oakhurst, LLC v. Monsoon Blockchain Storage, Inc. : Case No. 17-12560(BLS), Adversary proceeding no. 19-50102 (BLS)**

Honorable Sir:

I am the CEO of Monsoon Blockchain Storage, Inc. ("Monsoon") the Defendant in the above captioned action. I was denied CM/ECF filing privileges. Accordingly, I have no alternative but to file Monsoon's enclosed Answer by Hard Copy. Please accept this filing with my apologies.

Respectfully submitted,

_/s/ Christopher Basile_
Christopher Basile, CEO
Monsoon Blockchain Storage, Inc.

CC: Pachulski Stang Ziehl & Jones, LLP
    919 North Market Street 17th floor
    P.O. Box 8705
    Wilmington Delaware, 19899
    KTBS Law LLP
    1999 Avenue of the Stars, 39th floor
    Los Angeles, California, 90067
    Counsels for the Plaintiff