# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (JKS)<br><br>(Jointly Administered) |
| WOODBRIDGE WIND-DOWN ENTITY, LLC and WB 714 OAKHURST, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>MONSOON BLOCKCHAIN STORAGE, INC.,<br><br>Defendant. | Adversary Proceeding<br>No. 19-50102 (JKS) |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Richard M. Pachulski (*pro hac vice*)<br>Andrew W. Caine (*pro hac vice*)<br>Bradford J. Sandler (DE Bar No. 4142)<br>Colin R. Robinson (DE Bar No. 5524)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899<br>(302) 652-4100 | Michael L. Tuchin (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Samuel M. Kidder (*pro hac vice*)<br>**KTBS LAW LLP, f/k/a Klee, Tuchin,**<br>**Bogdanoff & Stern LLP**<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>(310) 407-4000 |

*Counsel for the Plaintiffs*

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.

## TABLE OF CONTENTS

                                                                                                                                            **Page**

I. SUMMARY OF ARGUMENT ...................................................................................... 1
II. STATEMENT OF MATERIAL FACTS ........................................................................ 3
    A. The Failed Purchase Transaction ........................................................................ 3
    B. Defendant's Repeated Delay of this Adversary Proceeding ................................. 7
    C. Discovery Confirms Defendant Has No Defense ................................................ 9
III. ARGUMENT ................................................................................................................ 11
    A. Summary Judgment Standard ............................................................................ 11
    B. There is No Genuine Dispute That Plaintiffs Are Entitled to the Escrowed Funds ................................................................................................................. 12
IV. CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................11, 13

*U.S. ex rel. Anderson v. N. Telecom, Inc.*,
   52 F.3d 810 (9th Cir. 1995) ...............................................................................................11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..........................................................................................................11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..........................................................................................................11

*Sec'y U.S. Dep't of Labor v. Kwasny*,
   853 F.3d 87 (3d Cir. 2017)................................................................................................14

*Tamarind Resort Assocs. v. Gov't of Virgin Islands*,
   138 F.3d 107 (3d Cir. 1998)..............................................................................................11

**Other Authorities**

FED. R. BANKR. P. 7012 .............................................................................................................8

FED. R. CIV. P. 26 ...........................................................................................................9, 14, 15

FED. R. CIV. P. 36 ..............................................................................................................10, 14

FED. R. CIV. P. 37 ..............................................................................................................10, 15

FED. R. CIV. P. 56 ..............................................................................................................11, 15

Plaintiffs Woodbridge Wind-Down Entity, LLC (the "Wind-Down Entity") and WB 714 Oakhurst, LLC ("PropCo" and, together with the Wind-Down Entity, "Plaintiffs") submit this memorandum of law, together with the declarations of D. Mark Kemper (the "Kemper Declaration") and Robert J. Pfister (the "Pfister Declaration"), in support of their motion for summary judgment (the "Motion").

## I. SUMMARY OF ARGUMENT[1]

1. Notwithstanding its lengthy procedural history, this Adversary Proceeding is straightforward. Defendant failed to close on the purchase of a $10.6 million home in Beverly Hills, California. Pursuant to the parties' written contract, Defendant deposited $318,000 (*i.e.*, just 3% of the purchase price) as "earnest money" into escrow. The contract warned that this deposit would serve as liquidated damages in the event of default: "**LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.**" Purchase Agreement § 21.B.[2]

2. Defendant defaulted by failing to close the transaction – allegedly because funding that Defendant anticipated receiving never materialized. But Defendant's offer was written and accepted as an "all cash" offer, which meant that Defendant's failure to have the funds in hand at the time of closing is not a valid excuse for failing to close: "**ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan." Purchase Agreement § 3.C. In addition, less than a month after the contract was signed, Defendant released in writing any and all other contingencies, thereby agreeing to forfeit the earnest money deposit if Defendant was unable to close the transaction.

---

[1] Capitalized terms used but not defined in this Summary of Argument have the meanings ascribed to them in the balance of this brief, and all facts adverted to herein are supported by record citations in the balance of this brief.

[2] All provisions of the Purchase Agreement are quoted with original emphasis (*i.e.*, bold font and capitalization).

1

3. On these undisputed (and indisputable) facts, this ought to have been a simple matter. When Defendant failed to close, Plaintiffs sent Defendant a form to instruct the escrow agent to release the earnest money deposit to Plaintiffs as liquidated damages, consistent with the contract. In response, Defendant sent a letter threatening that the parties would become "embroiled in litigation" if Plaintiffs insisted on enforcement of the liquidated damages clause. Plaintiffs responded by filing this Adversary Proceeding 19 days later and duly serving the Complaint on Defendant. When Defendant failed to respond, it appeared that this Adversary Proceeding would reach a swift conclusion.

4. That was in March 2019 – two-and-a-half years ago. Defendant then belatedly appeared and opposed the default judgment motion. Judge Shannon reluctantly set aside the default, explicitly noting that it was "a very close call" and that Defendant's "proffered defenses appear thin." Adv. Docket No. 24 at ¶ 17 & n.24. Then Defendant unsuccessfully moved to compel arbitration and/or transfer the case to California; when that failed, Defendant's counsel withdrew. After further proceedings concerning Defendant's attempt to file a "pro se" answer (something an LLC such as Defendant cannot do), replacement counsel appeared and a new scheduling order was entered. Then Defendant failed to respond to written discovery and failed to comply with an agreed order directing that this matter be mediated in August 2021.

5. The time for further delay is over, and this Adversary Proceeding should be brought to a final and ineluctable conclusion. Defendant never had any defense to the straightforward claim set out in the Complaint – a fact confirmed by the limited discovery (in the form of initial disclosures) that Defendant ultimately did provide. Under the clear and unmistakable terms of the parties' written agreement, Plaintiffs are entitled to the $318,000 earnest money deposit as liquidated damages for Defendant's failure to close the transaction.

## II.  STATEMENT OF MATERIAL FACTS

**A.      The Failed Purchase Transaction**

6.       In November 2018, defendant Monsoon Blockchain, Inc. (the "Defendant") entered negotiations with Eldredge Investments, LLC ("Eldredge"), the predecessor-in-interest to Plaintiff PropCo,[3] concerning the purchase of real property located at 714 North Oakhurst Drive in Beverly Hills, California (the "Property").  *See* Kemper Decl. ¶ 2.

7.       These negotiations culminated in the execution of the *California Residential Purchase Agreement and Joint Escrow Instructions* effective November 15, 2018.  *See* Kemper Decl. ¶ 2 & Ex. A (the "Purchase Agreement").[4]  The Purchase Agreement is a fully integrated document that constitutes "a final, complete and exclusive expression" of the parties' mutual obligations.  *Id.* § 29.  The Purchase Agreement includes *Addendum No. 1 to Seller Multiple Counter Offer No. 1* (the "Addendum"), which specifies, *inter alia*, that this Court "shall have sole and exclusive jurisdiction to interpret and enforce the terms of the [Purchase] Agreement and the Parties hereby consent and submit to such exclusive jurisdiction."  Purchase Agreement (Ex. A) Addendum § 6.

8.       The Purchase Agreement called for Defendant to deposit 3% of the $10,600,000 purchase price (the "Purchase Price"), *i.e.*, $318,000, into escrow (the "Escrowed Funds").  *See* Purchase Agreement (Ex. A) § 3.A.  By selecting (among various alternatives) the contractual

---

[3]  This Adversary Proceeding was commenced by Eldredge and Woodbridge Group of Companies, LLC ("WGC").  *See* Adv. Docket No. 1.  By operation of the *First Amended Joint Chapter 11 Joint Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* [Bankr. Docket No. 2397] (as amended and supplemented, the "Plan"), the order confirming the Plan [Bankr. Docket No. 2903], and the Limited Liability Company Agreement of Woodbridge Wind-Down Entity LLC, as of the Effective Date of the Plan (as defined therein), the Wind-Down Entity was substituted for plaintiff WGC and PropCo was substituted for plaintiff Eldredge.  *See* Adv. Docket No. 9 (notice of substitution of plaintiffs).

[4]  Citations to "Exhibit" or "Ex. __" refer to the exhibits to the Kemper Declaration and Pfister Declaration, which are consecutively lettered (*i.e.*, the Kemper Declaration contains Exhibits A through F and the Pfister Declaration contains Exhibits G through H), and also share the same letters as the exhibits to the Complaint (*e.g.*, the Purchase Agreement is both Exhibit A to the Complaint and Exhibit A to the Kemper Declaration).

3

provision that specified an "**ALL CASH OFFER**," Defendant acknowledged "[t]his offer is NOT contingent on Buyer obtaining a loan." *Id.* § 3.C.

9. Upon execution of the Purchase Agreement, Defendant deposited the Escrowed Funds with non-party A&A Escrow Services, Inc. (the "Escrow Agent"). Kemper Decl. ¶ 3.

10. Section 14.F of the Purchase Agreement provides as follows:

> **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingencies or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

Purchase Agreement (Ex. A) § 14.F.

11. In accordance with Section 14.F, on December 4, 2018, Defendant executed the *Contingency Removal No. 2*. *See* Kemper Decl. ¶ 4 & Ex. B (the "Contingency Removal"). The Contingency Removal expressly provides that "**BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES**," and states:

> **Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information related to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.**

Contingency Removal (Ex. B) ¶ 3.

12. Upon Defendant's execution of the Contingency Removal, the Debtors moved for Court approval of the Purchase Agreement. On January 2, 2019, the Court approved the Purchase Agreement by entry of the *Order ... Authorizing the Sale of 714 N. Oakhurst Drive [Etc.]* [Bankr. Docket No. 3254] (the "Sale Order").

4

13. The Purchase Agreement expressly obligated both parties to close escrow and complete the transaction within fourteen days of the Court's entry of the Sale Order (the "Closing Date"). *See* Purchase Agreement (Ex. A) Addendum § 1. Accordingly, the Closing Date was required to occur no later than January 16, 2019. Kemper Decl. ¶ 5.

14. Eldredge satisfied all of its obligations under the Purchase Agreement and was ready, willing, and able to close on January 16, 2019. *Id.* ¶ 6. However, Defendant failed to deposit into escrow the remainder of the Purchase Price (and other deliverables required of Defendant under the Purchase Agreement). *Id.* Defendant was thus in breach of the Purchase Agreement.

15. Section 14.G of the Purchase Agreement provides as follows:

> **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 … Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

Purchase Agreement (Ex. A) § 14.G.

16. In accordance with Section 14.G, Eldredge delivered to Defendant *Seller's Demand to Close Escrow* dated January 18, 2019. *See* Kemper Decl. ¶ 7 & Ex. C (the "Demand to Close Escrow"). The Demand to Close Escrow required Defendant to close escrow on the Property within three days after receipt of the Demand to Close Escrow, *i.e.*, by January 22, 2019 (as January 21, 2019 was a legal holiday). *Id.* The Demand to Close Escrow included the following notice:

> **Note To Buyer:** If you do not close escrow by the end of the time period specified in this Demand to Close Escrow, and Seller has fully performed, Seller may (i) immediately cancel the Agreement; (ii) bring legal action against you for damages (including but not limited to the deposit); or (iii)

5

    bring legal action against you to force you to buy the Property (specific
    performance).

*Id*.

  17. Defendant failed to close escrow on or before January 22, 2019, as required by the Purchase Agreement and the Demand to Close Escrow.  Kemper Decl. ¶ 8.

  18. Section 21.B of the Purchase Agreement is a liquidated damages clause that provides in pertinent part as follows:  "**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.**"  Purchase Agreement (Ex. A) § 21.B.

  19. Accordingly, on January 23, 2019, Eldredge, through its legal counsel, gave notice to Monsoon that it was terminating the Purchase Agreement pursuant to Section 14.G thereof, *see* Kemper Decl. ¶ 9 & Ex. D (the "Termination Notice"), and requested that Defendant countersign the Cancellation of Contract, Release of Deposit, and Cancellation of Escrow (the "Cancellation Instructions") appended to the Termination Notice.

  20. The Cancellation Instructions, which Defendant was obligated to countersign pursuant to Section 14.H. of the Purchase Agreement, direct the Escrow Agent to remit the Escrowed Funds to Eldredge, as those funds are liquidated damages for Defendant's failure to consummate its purchase of the Property after having removed all buyer contingencies.  *See* Termination Notice (Ex. D); *see also* Purchase Agreement (Ex. A) § 21.B (liquidated damages provision).

  21. Defendant refused to execute the Cancellation Instructions.  Instead, by undated correspondence received on January 24, 2019, Defendant presented Eldredge with three "paths forward": (i) a return of the Escrowed Funds to Defendant, (ii) an extended closing date to

consummate the transaction, or (iii) "a legal dispute." *See* Kemper Decl. ¶ 10 & Ex. E (the "Monsoon Response").

22. Eldredge replied to Defendant's correspondence by letter dated January 25, 2019, *see* Kemper Decl. ¶ 11 & Ex. F (the "Eldredge Reply"), in which Eldridge reiterated its demand that Defendant countersign the Cancellation Instructions. *Id.* Defendant did not countersign the Cancellation Instructions or otherwise consent to the Escrow Agent's release of the Escrowed Funds to Plaintiffs. Kemper Decl. ¶ 12.

23. The Escrow Agent is unwilling to release the Escrowed Funds to Plaintiffs prior to receiving mutual escrow cancellation instructions signed by Defendant and Plaintiffs or a court order instructing the Escrow Agent to release the Escrowed Funds to Plaintiffs. *Id.*

**B. Defendant's Repeated Delay of this Adversary Proceeding**

24. On February 12, 2019, Plaintiffs initiated the adversary proceeding (the "Adversary Proceeding") by filing their *Adversary Complaint for: (I) Declaratory Judgment Regarding Ownership of Funds Held in Escrow; and (II) Turnover of Such Property as Property of the Estate* [Adv. Docket No. 1] (the "Complaint"). The Complaint seeks declaratory relief that the Escrowed Funds belong to them as liquidated damages and an order compelling Defendant to countersign the Cancellation Instructions or otherwise consent to the Escrow Agent's release of the Escrowed Funds to the Plaintiffs. *See id.* ¶¶ 36–42 & Prayer for Relief.

25. Defendant failed to answer timely or otherwise respond to the Complaint, and the Clerk entered default on April 1, 2019. *See* Adv. Docket No. 11. After Plaintiffs moved for default judgment, Defendant belatedly appeared and asserted that "Defendant first received notice of any filings in the Adversary Proceeding on March 27, 2019" (*i.e.*, after the deadline to respond to the Complaint), *see* Adv. Docket No. 17 at ¶ 9 – an assertion belied by, *inter alia*, documents later produced by Defendant's registered agent showing that the agent duly

7

transmitted the summons and Complaint to Defendant via "UPS Next Day Air" on February 19, 2019.  *See* Adv. Docket No. 22-1, Ex. 2.

26. While noting that the Default Judgment Motion presented "a very close call" and that Defendant's "proffered defenses appear thin," the Court set aside entry of default and afforded Defendant a second opportunity to answer or otherwise respond to the Complaint.  Adv. Docket No. 24 at ¶ 17 & n.24.

27. Next, Defendant sought to compel arbitration and/or transfer venue to California.  *See* Adv. Docket No. 38.  When the Court denied that request on July 15, 2020, *see* Adv. Docket No. 38, Defendant's answer became due July 29, 2020, *see* Fed. R. Bankr. P. 7012(a).  As a professional courtesy, however, Plaintiffs assented first to one and eventually another extension of the deadline to answer (to August 12, 2020 and September 9, 2020, respectively).  *See* Adv. Docket No. 49 at ¶ 11 (first extension) & Adv. Docket No. 55 (second extension).  Then Defendant's counsel moved for leave to withdraw on the basis that "Defendant has failed to substantially fulfill an obligation regarding Withdrawing Counsel's services, despite reasonable warning that continued failure to fulfill that obligation would result in Withdrawing Counsel withdrawing from representing Defendant."  Adv. Docket No. 49 at ¶ 17.

28. After counsel withdrew, Defendant purported to file an improper "pro se" third request for extension of the deadline to answer the Complaint.  *See* Adv. Docket No. 60; *see also* Adv. Docket No. 61 (objecting to Defendant's purported "pro se" filing as procedurally improper in light of Defendant's corporate status).  When even the requested extended deadline for Defendant's answer had passed (and no extension was ever granted), Plaintiffs once again moved for entry of default.  *See* Adv. Docket No. 63.  Defendant then purported to file a "pro se" answer, *see* Adv. Docket No. 64, which Plaintiffs moved to strike, *see* Adv. Docket No. 67.

8

29. Finally, in January 2021, Defendant retained replacement counsel, who filed the *Answer* [Adv. Docket No. 70] (the "Answer") on January 8, 2021. The Answer acknowledges the authenticity of the relevant documents attached to the Complaint (including the Purchase Agreement and the Contingency Removal), yet includes assertions that flatly contradict those operative documents – including that "the source of funds to purchase the property" was somehow an unsatisfied and unwaived contingency, *see* Answer ¶¶ 3–6, even though the Purchase Agreement and the Contingency Removal expressly provide otherwise.

**C.     Discovery Confirms Defendant Has No Defense**

30. On June 11, 2021, the Parties reached agreement on a proposed scheduling order, *see* Adv. Docket No. 78, which the Court approved and entered on June 16, 2021, *see* Adv. Docket No. 79 (the "Scheduling Order").

31. As stipulated by the parties, the Scheduling Order directed that "the Parties' initial disclosures shall include actual copies of all documents, electronically stored information, and tangible things within the scope of FRCP 26(a)(1)(A)(ii); a mere 'description by category and location' of such documents, electronically stored information, and tangible things shall be insufficient." Scheduling Order ¶ 3. *See also* Pfister Decl. ¶ 2. Accordingly, each party was required to produce by June 23, 2021 actual copies of all documents it "may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii).

32. Plaintiffs expended significant time and expense conducting a rigorous search for and review of responsive documents. Pfister Decl. ¶ 3. Plaintiffs ultimately produced over 1,500 pages of documents with their initial disclosures. *Id.*

33. Defendant, on the other hand, served its initial disclosures accompanied by just 58 pages of documents. *See id.* ¶ 4. The bulk of Defendant's production consisted of materials that

9

had already been appended to the Complaint as exhibits, including the Purchase Agreement (Compl. Ex. A), Contingency Removal (*id.* Ex. B), Demand to Close Escrow (*id.* Ex. C), Termination Notice (*id.* Ex. D), and Eldredge Reply (*id.* Ex. F). Pfister Decl. ¶ 4. The only additional document produced by Defendant was a Residential Listing Agreement from May 2018, *see id.* ¶ 4 & Ex. G (the "Listing Agreement") – a document that has no bearing on the parties' dispute, and certainly does not support any assertion that there was an unsatisfied or unwaived contingency concerning Defendant's financing, or that there were any agreements, promises, or representations outside the four corners of the Purchase Agreement.

34. As permitted by the Scheduling Order, Plaintiffs propounded follow-up interrogatories, document requests, and requests for admission on July 7, 2021. Pfister Decl. ¶ 5 & Ex. H (the "Consolidated Discovery Requests"). Responses to the Consolidated Discovery Requests were due by July 28, 2021, *see* Scheduling Order ¶ 5, but Defendant never responded, *see* Pfister Decl. ¶ 6. Accordingly, all requests for admission have been deemed admitted by operation of law, *see* Fed. R. Civ. P. 36(b), and Defendant is automatically and without further order of the Court precluded from introducing testimony or documents that it failed to supply as part of its discovery obligations, *see* Fed. R. Civ. P. 37(c)(1).

35. Finally, the Scheduling Order required the parties to mediate "during the month of August 2021." Scheduling Order ¶ 6. Notwithstanding the availability of the mediator of Defendant's choice, as well as Plaintiffs, Plaintiffs' counsel, and Defendant's counsel on several dates in August 2021, Defendant failed to respond to scheduling requests and no mediation took place. Pfister Decl. ¶ 7. This breach of the Scheduling Order was entirely of Defendant's making, and Defendant sought no relief from the Court.

## III. ARGUMENT

### A. Summary Judgment Standard

36. Summary judgment should be granted "if the movant shows that there is no ***genuine*** dispute as to any ***material*** fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). A fact is "material" if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.*

37. The movant "bears the initial responsibility of informing the … court of the basis for its motion" and identifying what "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party carries this burden, the "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is properly granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

38. Summary judgment is "'not a disfavored procedural shortcut,' but [rather is] the 'principal tool by which factually insufficient claims or defenses can be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources.'" *U.S. ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (quoting *Celotex*, 477 U.S. at 327). Where (as here) a dispute involves "the interpretation of an unambiguous contract," summary judgment is particularly appropriate. *Tamarind Resort Assocs. v. Gov't of Virgin Islands*, 138 F.3d 107, 110 (3d Cir. 1998) (citations omitted).

**B.     There is No Genuine Dispute That Plaintiffs Are Entitled to the Escrowed Funds**

39.     As a threshold matter, there is no dispute that the Purchase Agreement created a binding contract between the parties. *See, e.g.*, Answer ¶ 2 (admitting the portion of the Complaint that alleges the Purchase Agreement was a contract for the purchase of the Property). Indeed, when Defendant moved to compel arbitration, Defendant specifically sought to enforce this same contract, effectively admitting its validity. *See* Adv. Docket Nos. 38, 39, 44 (Defendant's motion, memorandum of law, and reply brief); *see also* Adv. Docket No. 48 (ruling denying Defendant's motion). Moreover, the Sale Order itself approved the Purchase Agreement and authorized the sale of the Property "pursuant to the Purchase Agreement," Sale Order ¶ 3, necessarily implying that the Purchase Agreement is valid and enforceable.

40.     Nor can there be any genuine dispute that Eldredge fully performed its obligations under the parties' contract. Although the Answer arguably attempts to raise issues as to this point, *see* Answer ¶ 6 ("Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment that Eldredge was ready, willing, and able to close the escrow on the Closing Date."), the evidence before the Court is that Eldredge did in fact perform all of its obligations. *See* Kemper Decl. ¶ 6 ("Eldredge satisfied all of its obligations under the Purchase Agreement and was ready, willing, and able to close on January 16, 2019.").[5]

41.     In addition to a valid contract and indisputable performance by Plaintiffs, there is no ***genuine*** dispute that Defendant breached the Purchase Agreement. The Addendum provides

---

[5] While not repeated in the Answer, the January 24, 2019 correspondence from Defendant attempted to insinuate that Eldredge had not finished certain "required seller repairs" and termite remediation work. *See* Monsoon Response (Ex. E) at 1–2. But as the January 25, 2019 reply to that correspondence carefully sets out (with uncontested supporting documentation), Eldredge in fact completed all of the repairs that it agreed to complete and the parties agreed to a credit for the balance. *See* Eldredge Reply (Ex. F). Defendant has never controverted this showing, and appears to have abandoned any argument on this point in favor of just flatly admitting that the sole reason the transaction did not close was that Defendant "never had the ability [*i.e.*, the funds] to purchase the Property, and it does not today have the [funds] to purchase the Property." Answer ¶ 4.

that "Close of Escrow shall take place as soon as practicable after the entry of [the Sale Order], but no later than fourteen (14) days following the entry of the Sale Order …." Purchase Agreement (Ex. A) Addendum § 1. The Court entered the Sale Order on January 2, 2019, and thus the parties were required to close escrow by January 16, 2019. Kemper Decl. ¶ 5. Defendant admits that "Monsoon was unable to close escrow," Answer ¶ 6, but argues that this breach was excused "because all contingencies had not been met, including the single most important contingency, Defendant's receipt of funding to enable it to purchase the Property." *Id*.

42. The crux of this Adversary Proceeding, then, is whether Defendant's failure to close is excused by the alleged fact that Defendant did not have enough money. This issue is resolved by the indisputable fact that under the contract, lack of funds is no excuse. As detailed above, the Purchase Agreement was structured and entered as an "**ALL CASH OFFER**" that was "NOT contingent on Buyer obtaining a loan." Purchase Agreement (Ex. A) § 3.C. In addition, Defendant separately executed the Contingency Removal, which very clearly provides that upon execution, Defendant would "not be entitled to a return of Buyer's deposit if Buyer does not close escrow" – even if the reason for the failure to close was that, for example, a "lender does not approve Buyer's loan." Contingency Removal (Ex. B) ¶ 3. *See also* Purchase Agreement (Ex. A) § 14.F (explaining the effect of a removal of contingencies).

43. In response, Defendant offers only naked assertions that there was some unsatisfied contingency concerning "the source of funds to purchase the property." Answer ¶ 3; *see also id.* ¶ 5 (asserting that "escrow could not be closed because all contingencies had not been met"). These bare assertions are the very sort of "mere allegations or denials [in a] pleading" that are insufficient to defeat summary judgment. *Liberty Lobby*, 477 U.S. at 256. Defendant's hypothetical contingency "the source of funds to purchase the property" is certainly

not present in the Purchase Agreement itself, and Defendant has neither produced nor even asserted the existence of any other writing in which it is contained. And when Defendant was finally obliged to produce actual copies of all documents it "may use to support its claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(ii); *see* Scheduling Order ¶ 3, Defendant produced ***nothing*** evidencing any such hypothetical contingency.

44. Reinforcing this point, Plaintiffs' discovery requests included the following request for admission – to which Defendant never responded, meaning that it is deemed at admitted as a matter of law under Rule 36(a)(3):

> Admit that the Monsoon Document Production – which was required to include "all documents … that [Defendant] has in its possession, custody, or control and may use to support its claims or defenses," FRCP 26(a)(1)(A)(ii) – does not include any documents evidencing or reflecting any unsatisfied and unwaived contingency or condition precedent to [Defendant]'s obligations under the Purchase Agreement.

Consolidated Discovery Requests (Ex. H) at Discovery Request No. 9 (Third Request for Admission). Accordingly, it is now "conclusively established" as an "unassailable statement of fact," *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017), that Defendant has no evidence that there was some unsatisfied or unwaived contingency or condition precedent to Defendant's obligations under the Purchase Agreement. This is automatic under the text of Rule 36; it requires no order from the Court.

45. Plaintiffs also requested that Defendant "Produce all Documents and Communications Concerning Monsoon's assertions in Paragraphs 3 and 4 of the Answer that only 'certain' contingencies were waived and that 'Monsoon did not release any and all contingencies.'" Consolidated Discovery Requests (Ex. H) at Discovery Request No. 5 (First Request for Production). Defendant produced no documents. Similarly, Defendant produced no documents in support of any of its myriad affirmative defenses listed in the Answer. To the

extent such documents existed, they would plainly fall within the scope of Defendant's initial disclosure obligations under Rule 26(a). Having not been produced, they are now automatically excluded from evidence "on a motion, at a hearing, or at a trial …." Fed. R. Civ. P. 37(c)(1). This, too, is automatic under the text of Rule 37; no order from the Court is required.

46. With a valid contract that was fully performed by Plaintiffs and indisputably breached by Defendant, there is no question that Plaintiffs are entitled to the Escrowed Funds as liquidated damages. The contract provides for this result in bold text: "**LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.**" Purchase Agreement (Ex. A) § 21.B.

\* \* \*

47. This Adversary Proceeding ought never to have been necessary. The contract governing the transaction is as clear as it can possibly be, and the facts have never been in dispute. Defendant forfeited its 3% earnest money deposit when it failed to close the transaction after having waived any and all contingencies, and those escrowed funds rightfully belong to Plaintiffs. The only reason this Adversary Proceeding was necessary – and the only reason it has dragged on for two and a half years – is Defendant's stated intention at the outset to ensure that the parties became "embroiled in a legal dispute" if Defendant did not get its way. Monsoon Response (Ex. E) at 2. That legal dispute has now dragged on for far longer than it should have, and it is now crystal clear that "there is no genuine dispute as to any material fact" and that Plaintiffs are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant the Motion, enter judgment in favor of Plaintiffs, and grant such other and further relief as the Court deems appropriate.[6]

| | |
|---|---|
| Dated: September 1, 2021<br>Wilmington, Delaware | PACHULSKI STANG ZIEHL & JONES LLP<br><br>*/s/ Colin R. Robinson*<br>Richard M. Pachulski (CA Bar No. 90073)<br>Andrew W. Caine (CA Bar No. 110345)<br>Bradford J. Sandler (DE Bar No. 4142)<br>Colin R. Robinson (DE Bar No. 5524)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899 (Courier 19801)<br>Tel.: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>    acaine@pszjlaw.com<br>    bsandler@pszjlaw.com<br>    crobinson@pszjlaw.com<br><br>-and-<br><br>KTBS LAW LLP<br>*f/k/a Klee, Tuchin, Bogdanoff & Stern LLP*<br>Michael L. Tuchin (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Samuel M. Kidder (*pro hac vice*)<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090<br><br>*Counsel for the Plaintiffs* |

---

[6] Plaintiffs reserve all rights to seek an award of attorneys' fees and costs. *See* Compl. ¶¶ 38, 42 (seeking an award of legal fees); Purchase Agreement (Ex. A) § 25 (fee-shifting provision with respect to "any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement").

16