# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In Re: | : | Chapter 11 |
|  | : |  |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | : | Case No. 17-12560 (JKS) |
|  | : |  |
| Remaining Debtors. | : | (Jointly Administered) |
|  | : |  |
| WOODBRIDGE WIND-DOWN ENTITY, LLC and WB 714 OAKHURST, LLC, | : | Adversary Proceeding No. 19-50102 (JKS) |
|  | : |  |
| Plaintiffs, | : |  |
| v. | : |  |
|  | : |  |
| MONSOON BLOCKCHAIN STORAGE, INC., | : |  |
|  | : |  |
| Defendant. | : |  |

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Edward A. Corma (DE Bar No. 6718)
Eric A. Browndorf (*pro hac vice*)
William P. Rubley (*pro hac vice*)
COOPER LEVENSON, P.A.
30 Fox Hunt Drive
Bear, DE 19701
(302) 838-2600
*Counsel for Defendant*

Dated:  September 17, 2021

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

NATURE AND STAGE OF PROCEEDING ...............................................................................1

SUMMARY OF ARGUMENT ................................................................................................1

STATEMENT OF FACTS .......................................................................................................3

LEGAL STANDARD AND CHOICE OF LAW .........................................................................7

ARGUMENT .......................................................................................................................8

I.      Plaintiff has received the full value of the Property from
        the sale to a third party and is not entitled to liquidated damages. ....................................8

        A.      Debtor's estate has received the full value of the Property
                from the sale to a third party, and it would be inequitable for
                the estate to receive Monsoon's deposit in addition to the sale proceeds................9

        B.      The Court is authorized to use its
                equitable powers to avoid a forfeiture of Monsoon's deposit................................11

II.     There are genuine issues of material fact regarding whether the actions
        of Plaintiffs and their agent, as well as the ongoing communications between
        the parties, entitle Monsoon to assert a defense to the alleged breach of contract. ...........14

III.    The Motion should be denied or stayed pending
        completion of mediation and the remainder of discovery. ..............................................18

CONCLUSION....................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

Allen v. Smith, 94 Cal. App. 4th 1270 (2002) ............................................................. 10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ..................................................... 7

Bramalea Cal., Inc. v. Reliable Interiors, Inc., 119 Cal. App. 4th 468 (4th Dist. 2004) ............... 15

Butner v. United States, 440 U.S. 48 (1979) ............................................................. 11

Carroll v. Imp. Motors, Inc., 33 Cal. App. 4th 1429 (1995) ............................................. 13

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................. 7

Dickson, Carlson & Campillo v. Pole, 83 Cal. App. 4th 436 (2000) ...................................... 17

DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd., 30 Cal. App. 4th 54 (1994) ................................................................................................... 15, 16

Edwards v. Symbolic Int'l, Inc., 2009 U.S. Dist. LEXIS 37523 (S.D. Cal. Apr. 30, 2009) ......... 10

Hunt v. Cromartie, 526 U.S. 541 (1999) ..................................................................... 7

In re Art & Architecture Books of the 21st Century, 518 B.R. 43 (Bankr. C.D. Cal. 2014) ........ 13

In re Extraction Oil & Gas, 622 B.R. 608 (Bankr. D. Del. 2020) ...................................... 11

In re Integrated Health Servs., 2000 Bankr. LEXIS 1319 (Bankr. D. Del. Aug. 11, 2000) ......... 11

In re Welded Constr., L.P., 618 B.R. 710 (Bankr. D. Del. 2020) ......................................... 8

Kay v. Kay, 188 Cal. App. 2d 214 (1961) .................................................................. 15

N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) .............................. 12

Pepper v. Litton, 308 U.S. 295 (1939) ...................................................................... 12

Petersen v. Hartell, 40 Cal. 3d 102 (1985) ................................................................. 13

Petrovich v. Arcadia, 36 Cal. 2d 78 (1950) ................................................................ 13

Reed v. S. Shore Foods, Inc., 229 Cal. App. 2d 705 (1964) .............................................. 13

Sarko v. Penn-Del Directory Co., 968 F. Supp. 1026 (E.D. Pa. 1997) ................................... 7

Staley v. State Bar of Cal., 17 Cal. 2d 119 (1941) ........................................................ 11

United States v. Lavin, 942 F.2d 177 (3d Cir. 1991) ...................................................... 11

United States v. One 1936 Model Ford V-8 De Luxe Coach, 307 U.S. 219 (1939) ................... 11

Wall St. Network, Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171 (2008) ............................ 15

Waterman Convalescent Hosp. v. Jurupa Cmty. Servs. Dist., 53 Cal. App. 4th 1550 (1996) ...... 12

**Statutes**

11 U.S.C. § 541 ................................................................................................................... 9

Cal. Civ. Code § 1442 ........................................................................................................ 13

Cal. Civ. Code § 1675 .......................................................................................................... 9

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................ 7

**Treatises**

11 Collier on Bankruptcy P TX1.09 (16th 2021) ...................................................... 11

**Other Authorities**

Arthur L. Corbin, "The Right of a Defaulting Vendee to the Restitution of Instalments Paid," 40
    Yale L.J. 1013 (1931) .................................................................................................. 12

**INTRODUCTION**[2]

Defendant, Monsoon Blockchain Storage, Inc. ("Defendant" or "Monsoon"), by and through undersigned counsel, respectfully submits this Brief in opposition to the Motion for Summary Judgment filed by Plaintiffs, Woodbridge Wind-Down Entity, LLC and WB 714 Oakhurst, LLC (collectively "Plaintiffs" or "the seller").

**NATURE AND STAGE OF PROCEEDING**

Plaintiffs commenced this adversary proceeding on February 12, 2019 seeking a declaratory judgment and turnover of property regarding a $318,000 deposit made by Monsoon toward the purchase of real property located at 714 N. Oakhurst Drive, Beverly Hills, California (the "Property"). Monsoon filed an Answer on January 8, 2021. Pursuant to a Scheduling Order entered on June 16, 2021, the parties are engaged in paper discovery to be followed by mediation and then depositions and the remainder of discovery. Plaintiffs filed the instant Motion for Summary Judgment on September 1, 2021.

**SUMMARY OF ARGUMENT**

1.    Plaintiffs assert that they are entitled to the deposit because Monsoon executed a contingency removal and defaulted on its obligation to close on the sale of the Property by a date certain.

2.    Monsoon argues that summary judgment should not be granted on Plaintiffs' claims for turnover of Monsoon's deposit or for a declaratory judgment regarding the same. Plaintiffs ultimately sold the real property located at 714 N. Oakhurst Drive, Beverly Hills, California (the "Property") to a third party for the same price that would have been paid by

---

[2] Capitalized terms used but not defined in this Summary of Argument have the meanings ascribed to them in the balance of this Brief, and all facts adverted to herein are supported by record citations in the balance of this Brief.

Monsoon. The Property belonged to Debtor's estate at the outset of the case, and the sale proceeds are likewise property of the estate. Plaintiffs have received the full value of the Property from the subsequent sale. Accordingly, there are no damages and no basis for turnover of Monsoon's deposit.

3.      In addition, there are genuine issues of material fact regarding the communications between the parties and the actions of Plaintiff and their agent between the time that the contingency removal was provided and Plaintiffs' termination of the contract. The parties engaged in continuous discussions regarding Monsoon's efforts to obtain financing, and Plaintiffs' agent referred Monsoon to a lender shortly before Plaintiffs terminated the contract to pursue the sale to the third party.

4.      Plaintiffs seek Monsoon's deposit based on a liquidated damages clause that requires a default by Monsoon. The facts as currently developed raise significant issues regarding whether Monsoon defaulted and whether Monsoon is entitled to certain contract defenses. For example, on December 20, 2018, after the contingency waiver had been signed, the seller asked Monsoon for an additional deposit and requested that Monsoon sign a contract addendum relating to the same. Monsoon explicitly rejected this request, and the parties at that time were fully aware of Monsoon's need to obtain funding and its efforts to secure it.

5.      Plaintiffs' Motion should be denied or alternatively stayed to allow the parties to participate in mediation and complete discovery.

## STATEMENT OF FACTS

The following facts are taken from the Declaration of Donald Basile (the "Basile Declaration"), the Declaration of Eric A. Browndorf (the "Browndorf Declaration"), and the Exhibits attached to the Basile Declaration.

After the sale to Monsoon failed to be completed, Plaintiffs sold the Property for the same purchase price of approximately $10.6 million that had been offered by Monsoon. Basile Declaration ¶ 2; Ex. A.

During the negotiations and discussions regarding the sale of the Property, Monsoon and its representatives never had any direct seller contact. All contact with the seller was through their agent, Tom Di Prizito. Basile Declaration ¶ 3. Mr. Di Prizito is also the person who introduced Monsoon to an additional lender as part of efforts to consummate the sale of the Property to Monsoon. Id. ¶ 4.

Monsoon and the seller entered into a Contract for Sale for the Property on or about November 14, 2018. Id. ¶ 5. On or about December 4, 2018, Monsoon executed Contingency Removal No. 2. Id. ¶ 6. However, even after the contingency removal was provided, Monsoon and Mr. Di Prizio continued to communicate regarding Monsoon's efforts to secure funding in order to go ahead with closing. Id. ¶ 7.

On or about December 12, 2018, Monsoon and the seller entered into a Nondisclosure Agreement allowing the seller to access certain proprietary information relating to Monsoon. Id. ¶¶ 8–9; Ex. B, C. Monsoon and Mr. Di Prizito exchanged further e-mails on or about December 13, 2018 regarding completion of the Nondisclosure Agreement, Monsoon's providing documents under the Nondisclosure Agreement, and Mr. Di Prizito's continuous contact with the seller. Basile Declaration ¶ 10; Ex. D. Monsoon provided the seller with certain

3

documents under the Nondisclosure Agreement, including letters of investment commitments from certain Korean companies as part of the anticipated funding that it was understood Monsoon would use to fund the purchase of the Property. Basile Declaration ¶ 11, 13. The seller later publicly disclosed the documents provided by Monsoon, in violation of the Nondisclosure Agreement. Id. ¶ 12.

Monsoon and Mr. Di Prizito exchanged further e-mails on or about December 18, 2018 in which Monsoon advised of delays that were being encountered in securing funding and Monsoon's ongoing efforts to resolve the issues. Monsoon also provided a Token Agreement and Token Subscription Agreement between Monsoon and investors as evidence of additional funding that was being secured. Id. ¶ 13; Ex. E. Both sets of agreements could be used as sources of the funding needed to close on the Property. See Basile Declaration ¶¶ 11, 13; Ex. D, E.

Monsoon and Mr. Di Prizito exchanged further e-mails on or about December 20, 2018 regarding the status of funding. Basile Declaration ¶ 14; Ex. F. Included with these e-mails was a proposed contract addendum that would provide for the immediate release of the deposit to the seller and for Monsoon to put up an additional deposit. Basile Declaration ¶ 14. Monsoon rejected this proposal, and the proposed addendum was not signed. Id.

Monsoon contends that, in spite of the prior contingency removal, the subsequent communications, the Nondisclosure Agreement, and exchange of documents regarding funding show that it was clear to all parties that the source of funds was going to be additional capital being raised by Monsoon that had not yet been received, and that the seller had indicated through these communications that the seller would work with Monsoon, including options such as extending the closing date or going with a back-up offer and refunding Monsoon's deposit. Id. ¶¶ 14–15.

In January of 2019, Mr. Di Prizito referred Donald Basile to Marc Rabkin, a loan officer with Rodeo Lending, Inc. in Los Angeles. Id. ¶ 16. Mr. Basile exchanged e-mails with Mr. Rabkin on January 21 and 23, 2019 to discuss potentially obtaining a loan to complete closing on the Property. Id. Mr. Rabkin also forwarded various documents related to the potential loan, including a Letter of Intent, Commercial Loan Application, Background and Credit Check Authorization, and Underwriting Disclosures. Id.; Ex. G. Mr. Di Prizito's referral to Mr. Rabkin and Rodeo Lending took place just days before the seller's unexpected attempt to take Monsoon's deposit. Basile Declaration ¶ 17. Monsoon contends that, based upon these communications and events, that the seller was acting in bad faith, had a planned alternate closing, and was using Mr. Di Prizito to defraud Monsoon out of the deposit. Id. ¶ 18.

Monsoon and Mr. Di Prizito exchanged further e-mails on or about January 24, 2019 in which Mr. Basile forwarded a letter to the seller regarding the status of the sale and deposit. Id. ¶ 19. Mr. Basile stated in the letter: "You were fully aware of the underlying funders behind the transaction as we provided a set of executed documents to you. We have kept you informed of the delays and received assurances from you Agent Tim of your desire to work to a successful transaction. . . . Further as late as Friday the 18th Tim provided a new lender contact and we have worked diligently with to arrange alternative funding under the clear expectation of cooperative process to close the transaction." Id.; Ex. H.

Monsoon contends that these e-mails and documents show that Monsoon was engaged in ongoing discussions with Mr. Di Prizio after the contingency removal and that Mr. Di Prizio was in continuous contact with the seller. Basile Declaration ¶ 20. Monsoon further contends that, in spite of the contingency removal, the parties remained in continuous discussions regarding Monsoon's efforts to secure funding from other sources and that the seller and Mr. Di Prizio

understood that Monsoon did not yet have funds in hand to complete the transaction. <u>Id.</u> ¶ 21. It is Mr. Basile's opinion and understanding, based on his personal involvement in these discussions, that Mr. Di Prizio had made clear that the delay in securing funding was not an issue. <u>Id.</u> Monsoon contends that these communications show that, as of December 17, 2018, it was clear to the seller that there were not yet funds available other than through the additional contingent financings, and that Mr. Di Prizio indicated through his communications that the seller wished to proceed under this understanding and was amenable to alternative action such as delaying closing or choosing a backup offer and returning Monsoon's deposit. <u>Id.</u> Moreover, the communications from December 20, 2018, in which the seller attempted to get Monsoon to provide them with an additional deposit and sign an addendum and Monsoon rejected this request, show that the seller was on notice of the status of Monsoon's efforts to obtain funding. <u>Id.</u> ¶ 22.

Regarding mediation, the parties, along with the mediator, Mark E. Felger, attempted to schedule a date for mediation in late August but were unable to find a date on which all participants would be available. Browndorf Declaration ¶ 2. Attempts to schedule the mediation in September have likewise been unsuccessful due to inability to find a mutually agreeable date as well as Mr. Felger's limited availability during the month. <u>Id.</u> ¶ 3. The participants are working on finding a mutually agreeable date for mediation in October. <u>Id.</u> ¶ 4. The participants, including Mr. Felger, are understood to have greater availability in October, and counsel for Monsoon is confident that the mediation will be completed during that month. <u>Id.</u>

## **LEGAL STANDARD AND CHOICE OF LAW**

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056 and 9014(c), provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the burden of establishing the absence of a genuine dispute as to a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). When the moving party bears the burden of persuasion at trial, summary judgment "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999).

Summary judgment cannot be avoided by introducing only "a mere scintilla of evidence," or by relying on "conclusory allegations, improbable inferences and unsupported speculation." Sarko v. Penn-Del Directory Co., 968 F. Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must resolve all doubts and consider the evidence in the light most favorable to the nonmoving party. See id. at 255 ("[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The contract does not specify a choice of law, but California law should apply to the contract issues implicated in this dispute. In the absence of an effective choice of law in the

contract, the analysis is governed by Section 188 of the Restatement (Second) of Conflict of Laws, which provides for making a determination of which state has the most significant relationship to the transaction and the parties by considering the following factors: the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties. See In re Welded Constr., L.P., 618 B.R. 710, 726 (Bankr. D. Del. 2020). These factors point definitively to the application of California law, particularly as the Property is located there.

## ARGUMENT

**I.      Debtor's estate has received the full value of the Property
from the sale to a third party, and it would be inequitable for
the estate to receive Monsoon's deposit in addition to the sale proceeds.**

Plaintiffs are not entitled to a declaratory judgment or to turnover of the deposit as a matter of law, because Plaintiffs have received the full value of the Property. After terminating the contract with Monsoon, Plaintiffs sold the Property to another buyer and received the full $10.6 million purchase price that Monsoon would have paid. See Basile Declaration ¶ 2; Ex. A. Therefore, Monsoon's deposit is not property of the estate. Moreover, it would be inequitable for Plaintiffs to receive a windfall in the form of Monsoon's deposit. The Court may properly exercise its equitable powers, consistent with the Bankruptcy Code and California law, in fashioning a remedy that avoids an undue forfeiture of the deposit.

A.    __Monsoon's deposit is not property of the estate.__

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Property was owned by Debtor as of the commencement of the bankruptcy case.

Property of the estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(6). Therefore, the sale proceeds—which represent the full market value of the Property and match the amount that Monsoon would have paid under the contract—are also property of the estate. Therefore, Monsoon's deposit is not property of the estate. It would constitute an undue windfall if the estate were to receive the deposit in addition to the sale proceeds.

California's statutes provide as follows regarding liquidated damages clauses in real estate purchase contracts:

> For the purposes of subdivisions (c) [regarding liquidated damages provisions not exceeding 3 percent of the purchase price] and (d) [regarding liquidated damages provisions exceeding 3 percent of the purchase price], the reasonableness of an amount actually paid as liquidated damages shall be determined by taking into account both of the following:
>
> (1) The circumstances existing at the time the contract was made.
>
> (2) The price and other terms and circumstances of any subsequent sale or contract to sell and purchase the same property if the sale or contract is made within six months of the buyer's default.

Cal. Civ. Code § 1675(e).

This statute specifically provides for such an assessment of the subsequent sale price and circumstances in connection with real estate contracts as opposed to contracts for the sale of personal property. The Southern District of California illustrated this point in Edwards v. Symbolic Int'l, Inc., No. 07-CV-1826-JMA, 2009 U.S. Dist. LEXIS 37523 (S.D. Cal. Apr. 30,

2009), in which a would-be buyer of a Ferrari sought a return of his $300,000 deposit, which the seller sought to retain as liquidated damages in spite of having sold the car for more than the original contract price. Id. at *8–9. Notably, the court found that "the amount of damages *actually suffered has no bearing* on the validity of the liquidated damages provision." Id. at *27 (emphasis in original). The fact that personal property and not real property was being sold was critical to this ruling. The court distinguished one of the cases cited by the would-be buyer as involving real property and thus falling under § 1675. See id. at *27 n.7 (noting that the case of Allen v. Smith, 94 Cal. App. 4th 1270 (2002), was not applicable to the dispute over the Ferrari because the "court applied Civ. Code § 1675, which is only applicable to purchase and sale of real property, rather than Civ. Code § 1671"). In other words, in a dispute involving personal property, the buyer could not benefit from § 1675 and its provision for taking into account the subsequent sale price and other circumstances.

California's statutory scheme thus provides for a fact-intensive inquiry in exactly the type of situation that exists in this case. The purpose of § 1675 is to ensure an equitable resolution and to prevent windfalls when liquidated damages are sought after a subsequent sale. When, as here, nothing has been lost by the seller and no damages are suffered due to the real property being sold for at least the same price as agreed in the contract, the statute demands a factual inquiry and calls for the court to fashion an equitable remedy. Therefore, in this case it is appropriate for the Court to consider the fact that Debtor's estate received the full sale price for the Property shortly after terminating the contract with Monsoon. Since the estate has received the full value of the Property from the sale proceeds, it should not also receive Monsoon's deposit. Moreover, the circumstances surrounding the discussions between the parties, as well as the factual issues regarding the seller's conduct and possible intent to sell to an alternate buyer while seeking to

obtain Monsoon's deposit, are relevant to the determination of how much in liquidated damages, if any, Plaintiffs should receive. These issues at the very least should be fully developed through the remainder of discovery after mediation is completed. For these reasons, Plaintiff's Motion should be denied or in the alternative stayed until the completion of mediation and discovery.

**B.** **The Court is authorized to use its**
 **equitable powers to avoid a forfeiture of Monsoon's deposit.**

This case presents an appropriate situation for the Court to exercise its equitable powers, in a way that is consistent with applicable law, to prevent an unjust forfeiture of Monsoon's deposit after Debtor's estate has already received the full value of the Property. It has long been recognized that "the law abhors a forfeiture." United States v. Lavin, 942 F.2d 177, 182 (3d Cir. 1991); see also United States v. One 1936 Model Ford V-8 De Luxe Coach, 307 U.S. 219, 226 (1939) ("Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law."); Staley v. State Bar of Cal., 17 Cal. 2d 119, 159 (1941) ("It is an oftquoted maxim of chancery that 'Equity abhors a forfeiture.' Or 'Equity abhors forfeitures.'"). This Court has likewise recognized this principle. See, e.g., In re Integrated Health Servs., No. 00-389 (MFW), 2000 Bankr. LEXIS 1319, at *8–9 (Bankr. D. Del. Aug. 11, 2000) (noting that "the Bankruptcy Court is a court of equity and that we are required to consider all the equities of this case," and that "equity abhors a forfeiture"); In re Extraction Oil & Gas, 622 B.R. 608, 627 (Bankr. D. Del. 2020) ("And, as this is a Court of equity, the Court will consider and evaluate the balance of equities to each of the parties and the impact on the public at large.").

"The equity powers of the bankruptcy court play an important part in the administration of bankrupt estates in countless situations in which the judge is required to deal with particular, individualized problems." Butner v. United States, 440 U.S. 48, 55–56 (1979); see also 11 Collier on Bankruptcy P TX1.09 (16th 2021) ("The bankruptcy court is often described as a

court of equity. Bankruptcy fosters equitable distribution of a troubled company's assets. Title 11

cases create a scenario in which creditors of equal rank share burdens equitably, and the

bankruptcy court applies equitable principles in determining claims of creditors, applies

equitable tests of fairness in confirmation of a reorganization plan, and uses equity in its

jurisdiction. . . . The bankruptcy court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of title 11." (citing 11 U.S.C. § 105(a))).

Bankruptcy courts have traditionally been described as courts of equity. See Pepper v.

Litton, 308 U.S. 295, 304–05 (1939). The Bankruptcy Reform Act of 1978 broadened the scope

of bankruptcy courts:

> The judges of the bankruptcy courts are vested with all of the "powers of a court
> of equity, law, and admiralty," except that they "may not enjoin another court or
> punish a criminal contempt not committed in the presence of the judge of the
> court or warranting a punishment of imprisonment." 28 U.S.C. § 1481 (1976 ed.,
> Supp. IV). In addition to this broad grant of power, Congress has allowed
> bankruptcy judges the power to hold jury trials, § 1480; to issue declaratory
> judgments, § 2201; to issue writs of habeas corpus under certain circumstances,
> § 2256; to issue all writs necessary in aid of the bankruptcy court's expanded
> jurisdiction, § 451 (1976 ed. and Supp. IV); see 28 U.S.C. § 1651; and to issue
> any order, process or judgment that is necessary or appropriate to carry out the
> provisions of Title 11, 11 U.S.C. § 105(a) (1976 ed., Supp. IV).

N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 55 (1982).

As Professor Corbin has stated: "Penalties and forfeitures are not favored; and calling an

outrageous penalty by the more kindly name of liquidated damages does not absolve it from its

sin." Arthur L. Corbin, "The Right of a Defaulting Vendee to the Restitution of Instalments

Paid," 40 Yale L.J. 1013, 1016 (1931); see also Waterman Convalescent Hosp. v. Jurupa Cmty.

Servs. Dist., 53 Cal. App. 4th 1550, 1554 (1996) ("Penalties and forfeitures are not favored by

the courts, and statutes imposing penalties or creating forfeitures must be strictly construed."

(quoting Schuhart v. Pinguelo, 230 Cal. App. 3d 1599, 1610 (1991))).

"The public policy that equity abhors forfeiture is also well represented in California law. . . . The policy of abhorring forfeitures has been followed in the case law wherein courts have strictly construed the language of contracts to avoid forfeiture." In re Art & Architecture Books of the 21st Century, 518 B.R. 43, 50 (Bankr. C.D. Cal. 2014); see also Cal. Civ. Code § 1442 ("A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."); Petersen v. Hartell, 40 Cal. 3d 102, 112 (1985) ("It is a *universal rule* in equity never to enforce either a penalty or forfeiture." (emphasis in original) (quoting 2 Story's Eq., 1319); Petrovich v. Arcadia, 36 Cal. 2d 78, 84 (1950) ("Forfeitures in the nature of a penalty are not favored; and language must be so construed as to avoid a forfeiture if that is possible."); Reed v. S. Shore Foods, Inc., 229 Cal. App. 2d 705, 713 (1964) ("The law abhors forfeitures."); Carroll v. Imp. Motors, Inc., 33 Cal. App. 4th 1429, 1437 (1995) ("[E]quity abhors a forfeiture (citing O'Morrow v. Borad, 27 Cal. 2d 794, 800 (1946))).

The Court may grant an equitable remedy in this case by providing for the deposit to be returned to Monsoon, and this remedy would be consistent with both California law and the Bankruptcy Code. Debtor's estate has received the full value of the Property through the subsequent sale, and it would be inequitable to give the estate a windfall by causing Monsoon to forfeit its deposit. This is the purpose of California Civil Code § 1675, which provides a mechanism for courts to analyze the circumstances surrounding a claim for liquidated damages in a contract to purchase real property, including the price obtained in a subsequent sale. Monsoon's position is also grounded in Bankruptcy Code § 541, which describes what is and is not property of the estate. Debtor's estate already has the full value of the Property, and anything above that is not property of the estate. Monsoon's position is also consistent with the case law

13

cited herein that emphasizes the equitable powers of bankruptcy courts and the maxim that

equity abhors forfeitures.

## II.    There are genuine issues of material fact regarding whether the actions of Plaintiffs and their agent, as well as the ongoing communications between the parties, entitle Monsoon to assert a defense to the alleged breach of contract.

The contract provides for liquidated damages "[i]f Buyer fails to complete this purchase

because of Buyer's default." Purchase Agreement § 21.B.2. The communications and events that

took place after the delivery of the contingency removal create a genuine issue of material fact as

to whether Plaintiffs are entitled to liquidated damages under the contract.

In spite of Plaintiffs' assertion that the transaction was nothing more than an "all cash

offer," see Plaintiffs' Brief ¶ 2, the record shows continuous discussions between the parties

regarding Monsoon's efforts to obtain funding for more than a month after the execution of the

contingency removal. On or about December 20, 2018, Monsoon explicitly rejected a request

from the seller to make an additional deposit and sign a related addendum, further showing that

the seller was well aware of the need for funding and Monsoon's efforts to obtain it. In addition,

Mr. Di Prizito referred a lender to Monsoon in January of 2019, apparently at the same time that

the seller was preparing to terminate the contract, sell to a third party, and seek to obtain

Monsoon's deposit. The seller also publicly disclosed documents in violation of the

Nondisclosure Agreement. See Basile Declaration ¶ 12.

Based upon these facts, there remain genuine issues of material fact regarding the effect

of these communications and Plaintiffs' actions that preclude a finding that Monsoon is liable for

liquidated damages as a matter of law. Whether Monsoon's obligation to close by a dater certain

was waived, excused, or suspended by virtue of the ongoing communications with the seller

regarding funding and Mr. Di Prizito's referral to a lender is an unresolved factual issue that

requires further development through discovery in the event that the parties cannot resolve the dispute at mediation.

As described more fully above, Plaintiffs have sold the Property for the full price it was expecting from Monsoon and therefore have suffered no damages. The existence of damages is a required element for a breach of contract claim. See Wall St. Network, Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171, 1178 (2008); see also Bramalea Cal., Inc. v. Reliable Interiors, Inc., 119 Cal. App. 4th 468, 473 (4th Dist. 2004) ("A breach of contract is not actionable without damage.").

There are also factual issues regarding the communications between the parties and Plaintiffs' actions that should preclude a finding of summary judgment as to Monsoon's alleged breach of the contract. In particular, factual issues remain as to whether defenses such as waiver and estoppel are applicable.

California courts define waiver as "the intentional relinquishment of a known right after knowledge of the facts." DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd., 30 Cal. App. 4th 54, 60 (1994) (citations omitted); see also Kay v. Kay, 188 Cal. App. 2d 214, 218 (1961) (noting that waiver requires "an actual intention to relinquish" a known right, "or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished").

The record shows that a genuine issue of material fact exists regarding whether Plaintiffs waived the right to hold Monsoon strictly to a requirement to close by a date certain and make an all cash offer with no contingencies. The evidence indisputably shows that Plaintiffs and Mr. Di Prizito knew of Monsoon's efforts to obtain funding. In addition, the seller followed up after the contingency removal by asking for a further deposit and another contract addendum on or about

December 20, 2018. Monsoon explicitly rejected this request. Moreover, Mr. Di Prizito referred

Monsoon to a lender in January of 2021. The extent of Plaintiffs' accommodations to Monsoon

during these discussions and Plaintiffs' intent regarding the prospective sale to Monsoon or to a

third party are factual issues that should be decided at trial. At the very least, these issues should

be fully developed in discovery after the parties have participated in mediation.

These facts also give rise to an estoppel defense. This defense applies "where the conduct

of one side has induced the other to take such a position that it would be injured if the first

should be permitted to repudiate its acts." DRG/Beverly Hills, 30 Cal. App. 4th at 59. Estoppel

consists of four elements: "(1) The party to be estopped must know the facts; (2) [the party to be

estopped] must intend that his conduct shall be acted upon, or must so act that the party asserting

the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel

must be ignorant of the true state of facts; and, (4) [the party asserting the estoppel] must rely

upon the conduct to [that party's] injury." Id. (internal quotation marks omitted) (quoting Ins.

Co. of the West v. Haralambos Beverage Co., 195 Cal. App. 3d 1308, 1321 (1987)).

The record leaves no doubt that Plaintiffs knew of all the facts regarding Monsoon's

efforts to obtain funding and complete the sale. Plaintiffs also continued discussions with

Monsoon even after Monsoon explicitly rejected the December 20, 2018 request for an

additional deposit and contract addendum. The extent to which Plaintiffs intended for Monsoon

to act upon their conduct, or had the right to believe it was so intended, is a factual issue that

should be determined at trial or further developed in discovery. Likewise, the true state of the

facts regarding Plaintiffs' intentions or plans to sell the Property to a third party, and

consequently Monsoon's level of ignorance of the true state of the facts, comprises a genuine

16

issue of material fact, as does the level of Monsoon's reliance on the representations of Plaintiffs and Mr. Di Prizito.

There also exists a factual issue as it pertains to the defense of unclean hands. This defense "requires inequitable conduct by the plaintiff in connection with the matter in controversy and provides a complete defense to the plaintiff's action." Dickson, Carlson & Campillo v. Pole, 83 Cal. App. 4th 436, 446 (2000) (citing DeGarmo v. Goldman, 19 Cal. 2d 755, 765 (1942)). The unclean hands defense "does not apply in every instance where the plaintiff has committed some misconduct in connection with the matter in controversy, but applies only where it would be inequitable to grant the plaintiff any relief." Id. at 446–47.

There are sufficient facts at this state to suggest a possible unclean hands defense. In particular, the facts indicate that Plaintiffs intended to sell the Property to a third party while seeking to obtain Monsoon's deposit, as they took steps to terminate the contract at the same time that Monsoon was speaking with the lender referred by Mr. Di Prizito. Basile Declaration ¶¶ 16–21. This was after Plaintiffs had attempted to get Monsoon to provide an additional deposit and sign a contract addendum; discussions continued even after Monsoon rejected this request. See id. ¶¶ 14, 22. In addition, Plaintiffs disclosed certain documents in violation of the Nondisclosure Agreement. See id. ¶ 12. As with the other defenses, these factual issues should be resolved at trial or at least should be fully developed in discovery.

**III.    The Motion should be denied or stayed pending**
**completion of mediation and the remainder of discovery.**

As described above, the factual issues that exist in this case should be resolved by the trier of fact, and Plaintiffs' Motion should be denied on that basis. Alternatively, the Motion should be stayed to allow for the completion of mediation and discovery.

The Scheduling Order provides that, after mediation is complete, a new scheduling order is to be entered regarding depositions, experts, and pre-trial matters. See Browndorf Declaration ¶ 5. The parties agreed on this sequence to allow for some development of the factual record to promote a more substantive mediation process. See id. ¶ 6. The issues raised in this Motion would be more appropriately addressed after the completion of mediation and the remaining discovery.

## CONCLUSION

For the above reasons, Monsoon respectfully requests that the Court deny Plaintiffs' Motion, or in the alternative that the Court stay the Motion until the completion of mediation and discovery, and for such other and further relief that the Court deems proper and just.

COOPER LEVENSON, P.A.
Attorneys for Defendant

Dated:  September 17, 2021            By:    /s/ Edward A. Corma
                                                          Edward A. Corma (DE Bar No. 6718)
                                                          Eric A. Browndorf (*pro hac vice*)
                                                          William P. Rubley (*pro hac vice*)
                                                          COOPER LEVENSON, P.A.
                                                          30 Fox Hunt Drive
                                                          Bear, DE 19701
                                                          (302) 838-2600; Fax: (302) 838-1942

18